IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 81806-6-I |
| JOSHUA DEAN MCINTYRE, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) ) | |

VERELLEN, J. — We presume defense counsel's performance was reasonable, and a petitioner alleging otherwise must overcome this presumption. Because Joshua McIntyre fails to establish defense counsel's performance was deficient at sentencing by declining to discuss inapposite case law, McIntyre fails to demonstrate resentencing is required for his conviction for second degree rape of a child.

McIntyre alleges resentencing is required to correct errors in his judgment and sentence regarding his term of community custody from his conviction for third degree rape of a child, community custody condition 8, and imposition of mandatory legal financial obligations (LFOs).

Because the combined duration of McIntyre's incarceration and term of community custody exceeds the statutory maximum, we accept the State's concession that resentencing is required to correct the duration of community custody for the third degree rape of a child conviction.

Because community custody condition 8 fails to provide ascertainable standards by requiring approval of a community corrections officer before forming

"relationships with families who have minor children," it is unconstitutionally vague. Resentencing is required to strike or amend the condition.

And because the 2018 amendments to RCW 10.01.160 applied to McIntyre and the trial court imposed certain LFOs at sentencing without assessing whether McIntyre was indigent, resentencing is required.

Therefore, we deny in part, grant in part, and remand for resentencing consistent with this opinion.

## FACTS

Joshua McIntyre was in a "catastrophic" car crash in 2010 at age 21 that caused serious physical injuries.[1] He also suffered a traumatic brain injury (TBI). McIntyre's personality was altered "significantly" after the crash, changing from being "ambitious, driven . . . very disciplined and dedicated" to showing "a lot of immaturity."[2] Because he caused the crash and injured others, McIntyre was convicted of vehicular assault in 2013.

In March of 2017, McIntyre was convicted of second degree rape of a child, B.G., and of third degree rape of a child, L.S.[3] He raped B.G. in late 2016 while awaiting trial for having raped L.S. in early 2015. Because the parties agreed his prior conviction for vehicular assault made him ineligible for an alternative sentence on the third degree rape conviction, McIntyre requested a special sex offender sentencing alternative (SSOSA) on the second degree rape conviction only. He

---

[1] App. at 183.

[2] Id. at 189.

[3] State v. McIntyre, No. 76873-5-I, slip op. at 1 (Wash. Ct. App. Feb. 11, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/768735opin.pdf.

argued he was amenable to treatment because the TBI caused "a real change"[4] that makes him "think like he's 14" and not question his conduct.[5] The trial court denied McIntyre's request, sentencing him to 41 months' incarceration for the third degree rape and an indeterminate sentence of a minimum of 158 months' incarceration with a maximum of life for the second degree rape, with both sentences running concurrently. The court also imposed a period of community custody for each conviction, LFOs, and community custody conditions.

McIntyre timely filed this personal restraint petition.

## ANALYSIS

### I. Ineffective Assistance of Counsel

McIntyre contends he received ineffective assistance of counsel during sentencing. We review claims of ineffective assistance of counsel de novo.[6] To prevail, McIntyre must prove that defense counsel's performance was deficient and that without the deficient performance the result, by a reasonable probability, would have been different.[7] McIntyre's claim fails unless both are proven.[8] When considering a claim of ineffective assistance, we presume defense counsel's

---

[4] App. at 93.

[5] App. at 53.

[6] Matter of Lui, 188 Wn.2d 525, 538, 397 P.3d 90 (2017) (citing State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009)).

[7] Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[8] In re Crace, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012) (citing Strickland, 466 U.S. at 697).

performance was not deficient.[9]  To overcome this presumption, McIntyre "must establish an absence of any legitimate trial tactic that would explain counsel's performance."[10]

The premise of McIntyre's argument is that defense counsel "presented the sentencing court with a factual argument that McIntyre was immature and deserving of a SSOSA" but was deficient because he "failed to present the sentencing court with the legal argument to support his factual claims."[11]  This argument is not persuasive because it relies upon facts unsupported by the record.

Defense counsel did not argue McIntyre's functional or biological age alone warranted an alternative sentence.  Rather, defense counsel argued McIntyre's neurological deficits contributed significantly to his crimes and warranted treatment.  Defense counsel explained McIntyre's TBI made sentencing "very complicated," presenting a "situation that needs to be looked at neurologically because there is still time to do something about it."[12]  He argued McIntyre was "amenable to [SSOSA] treatment and would benefit tremendously from it, especially if the treatment involves a significant neurological component."[13]  He explained to the trial court that the neurological treatment was central to the SSOSA being effective:

> The impact of McIntyre's traumatic brain injury cannot be overstated.  For example, prior to his twenty-first birthday, McIntyre didn't exhibit any signs of sexual behavioral problems.  It was only after

---

[9] Lui, 188 Wn.2d at 539 (citing State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011)).

[10] Id. (citing Grier, 171 Wn.2d at 33).

[11] Pet.'s Br. at 6.

[12] App. at 49, 50.

[13] App. at 94.

his auto accident that he took to social media, engaged in on line friendships with younger girls and ultimately became entangled in his current legal problems.[14]

Defense counsel argued that McIntyre's TBI, not his age, warranted a SSOSA.[15]

McIntyre contends defense counsel should have raised "supporting law,"[16] such as Matter of Light-Roth[17] and State v. O'Dell.[18] But those cases do not support the argument defense counsel made at sentencing. Light-Roth addressed procedural matters around considering youthfulness as a mitigating factor at sentencing.[19] And, as the Light-Roth court explained, "[T]his court, in O'Dell, again addressed whether youthfulness may be considered to support a departure from the standard sentencing range."[20] Neither Light-Roth nor O'Dell addressed the role of neurological deficits as mitigating factors. McIntyre fails to establish that defense counsel's decision against discussing inapposite cases was unreasonable. Because McIntyre fails to rebut the presumption of reasonableness, his claim of ineffective assistance fails.

II.  Sentence Duration for Third Degree Rape

McIntyre contends remand is required to correct the judgment and sentence for his conviction for third degree rape of a child because his term of confinement and term of community custody combined exceeds the statutory maximum. Third degree

---

[14] App. at 93.

[15] We note that McIntyre does not contend this argument was unreasonable.

[16] Pet.'s Br. at 12.

[17] 191 Wn.2d 328, 422 P.3d 444 (2018).

[18] 183 Wn.2d 680, 358 P.3d 359 (2015).

[19] 191 Wn.2d at 330.

[20] Id. at 334-35.

rape of a child is a class C felony,[21] which carries a maximum term of 60 months.[22] The court sentenced McIntyre to 41 months' incarceration and 36 months of community custody on count one of third degree rape of a child. This is greater than 60 months. The State concedes resentencing is required. Because RCW 9.94A.701(9) requires that a court reduce the duration of any term of community custody if it exceeds the statutory sentencing maximum when combined with the period of incarceration,[23] we accept the State's concession.

III. Community Custody Condition

McIntyre argues one of his conditions of community custody must be stricken because it is unconstitutionally vague. The State contends McIntyre is estopped from challenging this condition in a PRP because he challenged it in his direct appeal.

Generally, a PRP must raise "new points of facts and law" and should not "reiterate issues finally resolved at trial and on direct review."[24] In his direct appeal, McIntyre challenged this condition as being unrelated to his conviction.[25] Specifically, he argued "the court exceeded the statutory authority to impose the conditions because the conditions are not crime-related."[26] He did not argue and the court did not consider whether it was unconstitutionally vague. Because the court did

---

[21] RCW 9A.44.079(1). We note that RCW 9A.44.079(1) was amended, effective during the pendency of this appeal. LAWS OF 2021, ch. 142, § 4. Because the amendment has no effect on the issues before us, we cite to the current statute.

[22] RCW 9A.20.021(1)(c).

[23] State v. Boyd, 174 Wn.2d 470, 472-73, 275 P.3d 321 (2012).

[24] In re Pers. Restraint of Davis, 152 Wn.2d 647, 750, 101 P.3d 1 (2004) (citing In re Gentry, 137 Wn.2d 378, 388, 972 P.2d 1250 (1999)).

[25] McIntyre, slip op. at 7.

[26] Id.

not consider whether the condition was vague, McIntyre has presented a new issue for review.

Community custody condition 8 prohibits McIntyre from "form[ing] relationships with families who have minor children."[27] McIntyre argues condition 8 invites arbitrary enforcement because it fails to provide an ascertainable measure of when a relationship forms.

We review community custody conditions for an abuse of discretion.[28] A court "necessarily" abuses its discretion by imposing an unconstitutionally vague condition.[29] We review constitutional questions de novo.[30]

A community custody condition is unconstitutionally vague when "'(1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement.'"[31] The condition must provide "'fair warning of proscribed conduct'" [32] by allowing an ordinary person to be "sufficiently definite" about what conduct is prohibited and permitted. [33]

---

[27] App. at 24.

[28] State v. Wallmuller, 194 Wn.2d 234, 238, 449 P.3d 619 (2019) (citing State v. Padilla, 190 Wn.2d 672, 677, 416 P.3d 712 (2018)).

[29] Id. (citing Padilla, 190 Wn.2d at 677).

[30] Id. (citing Padilla, 190 Wn.2d at 677).

[31] Id. at 239 (quoting Padilla, 190 Wn.2d at 677).

[32] Id. (internal quotation marks omitted) (quoting State v. Sanchez Valencia, 169 Wn.2d 782, 791, 239 P.3d 1059 (2010)).

[33] State v. Nguyen, 191 Wn.2d 671, 681, 425 P.3d 847 (2018) (citing City of Spokane v. Douglass, 115 Wn.2d 171, 179, 795 P.2d 693 (1990)).

In State v. Nguyen, our Supreme Court concluded a similar community custody condition provided sufficient guidance and was not vague.[34] That condition required a defendant convicted of second degree child molestation to notify her community corrections officer of any "dating relationship" she entered.[35] The court upheld the condition, explaining "a person of ordinary intelligence can distinguish a 'dating relationship' from other types of relationships," such as being "just friends" or "engag[ing] in a single social activity."[36]

The State argues the condition challenged by McIntyre provides sufficient guidance because it "clearly prohibits the defendant from having more than [a] passing acquaintance with any family who has children."[37] The State's argument illustrates why this condition is distinguishable from the condition in Nguyen. An ordinary person can readily ascertain objective indicia to distinguish a romantic, dating relationship from other social relationships. Here, however, condition 8 provides no guidance about when routine, friendly interactions between McIntyre and a family slips from a mere passing acquaintance into more than a passing acquaintance. Indeed, an ordinary person could easily regard routine neighborliness as forming a relationship. Although "a subjective element in a [community custody] condition may be sufficiently specific if tethered to objective criteria,"[38] condition 8

---

[34] 191 Wn.2d 671, 682-83, 425 P.3d 847 (2018).

[35] Id. at 681.

[36] Id. at 682.

[37] Resp't's Br. at 23.

[38] United States v. Reeves, 591 F.3d 77, 81 (2d Cir. 2010); accord Nguyen, 191 Wn.2d at 683 (upholding a condition pairing "highly subjective qualifiers" with "an objective standard").

provides none. Because community custody condition 8 fails to provide ascertainable standards, it is unconstitutionally vague. The court abused its discretion by imposing the condition. Resentencing is required for the court to strike or clarify the prohibition.

IV. Discretionary LFOs

McIntyre argues two LFOs must be stricken because he was indigent at the time of sentencing. McIntyre was sentenced in April of 2017. The court imposed the $200 criminal filing and $100 biological sample fees. The court did not assess his ability to pay at that time. In May of 2017, the court found McIntyre was indigent and authorized appointment of an attorney at public expense to prosecute his appeal. His direct appeal was considered in early 2019, and the mandate issued in September 2019. While his appeal was pending, the legislature amended RCW 10.01.160 and prohibited courts from imposing LFOs on defendants found to be indigent at the time of sentencing.[39] These changes applied prospectively to defendants whose cases were pending on direct review.[40] McIntyre did not challenge these LFOs in his direct appeal and this PRP was timely filed, so this issue is properly raised for the first time.[41] Because the sentencing court did not

---

[39] State v. Ramirez, 191 Wn.2d 732, 747, 426 P.3d 714 (2018) (citing LAWS OF 2018, ch. 269, § 6).

[40] Id.

[41] See Gentry, 137 Wn.2d at 388-89 (explaining a PRP "should raise new points of fact and law that were not or could not have been raised in the principal action, to the prejudice of the defendant"). The State appears to argue we should not consider McIntyre's challenge to these LFOs because he did not challenge them on direct review. It cites no authority for the proposition that declining to raise an issue on direct review precludes a petitioner from raising it in a timely-filed PRP.

assess whether McIntyre was indigent and RCW 10.01.160 required that it do so, a resentencing hearing is necessary to determine whether he was indigent when originally sentenced in 2017.[42]

Therefore, we deny in part, grant in part, and remand for a resentencing hearing consistent with this opinion.

WE CONCUR:

Andrus, A.C.J.

---

[42] Because this conclusion resolves the issue, we do not reach McIntyre's claim of ineffective assistance of appellate counsel.